# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

## WACO DIVISION

| | |
|---|---|
| **Milestone IP LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Frost Bank,**<br><br>Defendant. | Case No. 6:20-cv-01087<br><br>Patent Case<br><br>Jury Trial Demanded |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Milestone IP LLC ("Plaintiff"), through its attorneys, files this Complaint for patent infringement against Frost Bank ("Defendant"), and alleges as follows:

### PARTIES

1. Plaintiff Milestone IP LLC is a corporation organized and existing under the laws of Texas that maintains its principal place of business at 6009 W. Parker Rd., Ste. 149 – 1124, Plano, TX 75093.

2. Defendant Frost Bank is a bank organized and existing under the laws of Texas that maintains an established place of business at 111 W Houston St., San Antonio, Texas 78205. Defendant can be served at its headquarters.

### JURISDICTION

3. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

1

4. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

**VENUE**

6. Venue is proper in this District under 28 U.S.C. § 1400(b), because Defendant has committed acts of patent infringement in this District and has an established place of business in this District. In addition, Plaintiff has suffered harm in this district.

**PATENTS-IN-SUIT**

7. Plaintiff is the assignee of all right, title and interest in United States Patent Nos. 6,236,994 ("the '994 Patent") and 6,473,523 ("the '523 Patent"), (collectively the "Patents-in-Suit"), including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patents-in-Suit. Plaintiff was assigned the Patents-in-Suit on August 15, 2020. The '994 Patent assignment was recorded with the United States Patent and Trademark Office on October 30, 2020. The '523 Patent assignment was recorded with the United States Patent and Trademark Office on August 20, 2020. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for Defendant's infringement of the Patents-in-Suit.

### The '994 Patent

8. The '994 Patent is entitled "Method and apparatus for the integration of information and knowledge," and issued May 22, 2001. The application leading to the '994 Patent was

filed on June 29, 1998. A true and correct copy of the '994 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

9. The '994 Patent is valid and enforceable.

10. The '994 Patent is directed to a novel architecture for the integration of data, information and knowledge, and more particularly to a method that manages and utilizes a knowledge repository for the purpose of enabling easy access, manipulation and visualization of synchronized data, information and knowledge contained in different types of software. '994 Patent, 1: 10-15.

11. The '994 Patent provides a novel and specific solution for computer-based information integration.

12. Prior to the '994 Patent, knowledge management systems were complex and error prone; had difficulty in locating and working with interrelated documents and data throughout the information generation lifecycle; lacked an efficient mechanism for locating and working with the many different types of information maintained in separate systems; failed to recognize, appreciate and enable the dependencies between data and documents 3throughout the information generation lifecycle; and inflexible of a process, during the information generation lifecycle, to handle situations where data changes force a series of document changes, which may in turn require modifications of other documents. *Id.* at 1:64 – 2:2.

13. The '994 Patent solved these problems by using a novel architecture that includes a knowledge repository for the purpose of enabling easy access, manipulation and

visualization of complete and synchronized information contained on a plurality of software. *Id.* at 2:24-29.

14. The novel invention in the '994 Patent represents an architecture, embodied for example in a Software product Suite, that manages and utilizes a knowledge repository, via knowledge integration middleware (KIMW), for the purpose of enabling easy access, manipulation and visualization of complete and synchronized information contained in different software systems. *Id.* at 4:13-18.

15. The following aspects of the present invention demonstrate that the '994 Patent is novel and not abstract: (1) the use of knowledge integration middleware in conjunction with traditional application integration middleware to build and manage an integration knowledge repository; providing a generic mechanism for bridging structured and unstructured data with uniform access to information; (2) the specification of four integrated knowledge-based soft are applications (described below) that collectively enable information integration with knowledge linkage, visualization and utilization of structured, unstructured and work practice data and metadata produced by knowledge workers in an enterprise; (3) use of a knowledge repository containing record of integration transactions, context information from users and applications, information metadata catalog, knowledge access control, application activation rules, metadata and rules for knowledge integration, knowledge generation, knowledge visualization, "live" knowledge links, task execution, and case-based data for regulatory review; (4) use of a three dimensional (3D) interface in conjunction with a user-specific conceptual schema providing access to enterprise information wherever it is stored and managed; and

16. (5) implementation of a rule-based paradigm for filing marketing applications to regulatory agencies that uses hypothesis/proof/assertion structures. *Id.* at 4:14-47.

16. Another novel aspect of the invention is embedding and executing "live" knowledge links stored in documents and associated analysis data allowing users to define and execute multiple tasks to be performed by one or more data or document applications within the information content. *Id.* at 5:13-17.

17. These novel and inventive aspects created an integrated and flexible process for providing integrated document management, image management, workflow management and information retrieval. *Id.* at 4:58-62.

## The '523 Patent

18. The '523 Patent is entitled "Portable text capturing method and device therefor," and issued October 29, 2002. The application leading to the '523 Patent was filed on May 4, 1999. A true and correct copy of the '523 Patent is attached hereto as Exhibit 2 and incorporated herein by reference. '523 Patent, 1:12-14.

19. The '523 Patent is valid and enforceable.

20. The '523 Patent invention relates generally to a digital camera, and more particularly, to a system integral with the digital camera for identifying, translating, and recording text in images.

21. The '523 Patent provides a novel, specific, and non-abstract solution for the computer based problem of converting images of documents to text or structured documents.

22. One problem with the prior art is that digital image cameras generally do not have a high enough resolution to guarantee that the textual and formatting content in the recorded bitmap image will be properly detected by a post-processing application. *Id.* at 1:30-34.

23. The '523 Patent solved this problem by inventing a method to (1) alert a user when it is not likely that the digital camera is capable of recording an image with sufficient resolution to evaluate the recorded image for textual and formatting content and (2) provided a user with the ability to identify and preview those regions of the recorded image that contain textual data. *Id.* at 1: 58-67.

24. The specification of the '523 Patent summarizes the invention as follows: "Initially, an image recorded with an imaging unit is displayed on a viewfinder of the portable imaging device. A first user input is received from a shutter release button. The first user input is adjusted using a pointing device for identifying a first position within the displayed image on the viewfinder. In response to the first user input, the image displayed on the viewfinder is recorded in a memory of the portable imaging unit. In addition, a second user input is received from the shutter release button. The Second user input is also adjusted using the pointing device for identifying a Second position within the displayed image on the viewfinder. Finally, an image segment is extracted from the image stored in the memory using the first position and the second position and examined to identify textual content. *Id.* at 2:1-19.

25. The '523 Patent contains the inventive aspect of identifying an error rate for the textual content in the image and then displaying a warning indicator on a viewfinder when the estimated error rate exceeds a threshold value. *Id.* at 20-27.

26. These novel and inventive aspects created a specific method of improving the method of identifying, translating, and recording text in images.

## COUNT 1: INFRINGEMENT OF THE PATENTS-IN-SUIT

27. Plaintiff incorporates the above paragraphs herein by reference.

28. **Direct Infringement.** Defendant has directly infringed one or more claims of the Patents-in-Suit in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the products, instrumentalities, and/or services identified in the charts incorporated into this Count below ("Defendant's Exemplary Products"), which have infringed the claims of the Patents-in-Suit identified in the charts incorporated into this Count below (the "Patents-In-Suit Claims") literally or by the doctrine of equivalents. On information and belief, numerous other products, instrumentalities, and/or services infringing the claims of the Patents-in-Suit have been made, used, offered for sale, sold, and/or imported by Defendant and/or its customers.

29. On information and belief, Defendant has also directly infringed, literally or under the doctrine of equivalents, the Patents-In-Suit Claims, by having its employees internally test and/or otherwise use Defendant's Exemplary Products in an infringing manner.

30. Defendant has had knowledge and notice of the Patents-In-Suit, as well as of its own infringement of the Patents-In-Suit, at least since the date of the filing of the original Complaint.

31. Plaintiff reserves the right to amend its pleadings should discovery show that Defendant's infringement of the Patents-in-Suit has been willful and further reserves the right to request the Court to deem the case exceptional within the meaning of 35 U.S.C. § 285, for which Plaintiff is entitled to enhanced damages.

32. Plaintiff incorporates by reference in its allegations herein the claim charts of Exhibits 3 and 4.

33. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## JURY DEMAND

34. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

A. That Defendant has infringed one or more claims of the Patents-in-Suit.

B. That Plaintiff be awarded all damages adequate to compensate it for Defendant's infringement of the Patents-in-Suit, such damages to be determined by a jury and an accounting, if necessary, to compensate Plaintiff adequately for Defendant's infringement;

C. That the damages awarded to Plaintiff be trebled, with pre-judgment and post-judgment interest, costs, expenses, and disbursements as justified under 35 U.S.C. § 284;

D. That this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees incurred in prosecuting this action; and

E. That Plaintiff be awarded such other relief as this Court deems just and proper.

| | |
|---|---|
| Dated: November 25, 2020 | Respectfully submitted, |
| Together with: | /s/ *Raymond W. Mort, III* <br> Raymond W. Mort, III |
| Franklin D. Kang, Esq. <br> Global Law & IP, PC <br> 25521 Prado de Oro <br> Calabasas, CA 91302 <br> Telephone: (310) 951-1123 <br> Email: franklindkang@gmail.com | Texas State Bar No. 00791308 <br> raymort@austinlaw.com <br> THE MORT LAW FIRM, PLLC <br> 100 Congress Ave, Suite 2000 <br> Austin, Texas 78701 <br> Tel/Fax: (512) 865-7950 <br> <br> ATTORNEYS FOR PLAINTIFF <br> MILESTONE IP LLC |